Page H. Jackson, Trial Atty., Arlington, Va., for plaintiff.

Francis R. Croak, Cook & Franke, Milwaukee, Wis., for defendants.

**Ray MARSHALL, Secretary of Labor, United States Department of Labor, Plaintiff,**

v.

**Douglas DEWEY and Waukesha Lime & Stone Co., Waukesha, Wisconsin, Defendants.**

**No. 79–C–114.**

United States District Court, E. D. Wisconsin.

July 10, 1980.

## MEMORANDUM AND ORDER

WARREN, District Judge.

On March 9, 1979, after having heard oral argument, this Court denied plaintiff's motion for a preliminary injunction in which plaintiff sought to enjoin defendants from refusing to permit an agent of the Secretary of Labor to enter and inspect defendants' stone quarry. A formal memorandum and order denying the motion of the Secretary of Labor was signed on March 29, 1979. In that opinion, this Court found *sub silentio* that warrantless searches of stone quarries as authorized by Congress in the Federal Mine Safety and Health Act of 1977 (FMSHA), 30 U.S.C. § 801–960, violated their Fourth Amendment right to be free from such searches. The Secretary moved for reconsideration and in a memorandum and order dated May 30, 1979, the Court again denied ther motion for a preliminary injunction.

In both memoranda, this Court recognized that in limited circumstances warrantless searches are permitted. *See United States v. Biswell*, 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972); *Colonnade Catering Corp. v. United States*, 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970). The Supreme Court's opinion in *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978) was relied upon extensively in the denial of the Secretary's mo-

tions. Quoting in part from that case, in the May 30, 1979 memorandum and order this Court stated:

> In *Barlow's*, the Supreme Court articulated why warrantless searches are permissible in certain industries (e. g., liquor and firearms) by stating "when an entrepreneur embarks upon such a business, he has voluntarily chosen to subject himself to a full arsenal of governmental regulation." The court further stated "the element that distinguishes these enterprises from ordinary businesses is a long tradition of close government supervision, of which any person who chooses to enter such a business must already be aware." *Barlow's, Inc.*, 436 U.S. at 313, 98 S.Ct. at 1821.

Focusing on this language, this Court held that warrantless searches of stone quarries are not constitutionally permissible under FMSHA because such businesses do not have a long tradition of government regulation. It was found that federal regulation of stone quarries did not commence until 1966. *See* the May 30, 1979 memorandum and order at 3.

The Secretary has now moved for summary judgment in effect asking again for reconsideration of the denial of his motion for a preliminary injunction. Parenthetically, the Secretary is seeking relief under 30 U.S.C. § 818(a)(1)(C) which authorizes the Secretary to seek an injunction when a mine operator or his agent "refuses to admit [the Secretary's] representatives to the coal or other mine . . . ." Plaintiff seeks entry to conduct an inspection of possible safety violations by the defendants.

Subsequent to the May 30, 1979 memorandum and order, Judge Myron L. Gordon of this district in *Marshall v. Cedar Lake Sand & Gravel Co.*, 480 F.Supp. 171 (E.D. Wis.1979) and three circuit courts, *Marshall v. Sink*, 614 F.2d 37 (4th Cir. 1980), *Marshall v. Nolichuckey Sand Co.*, 606 F.2d 693 (6th Cir. 1979), *cert. denied sub nom., Nolichuckey Sand Co. v. Marshall*, —— U.S. ——, 100 S.Ct. 1835, 64 L.Ed.2d 261 (1980), and *Marshall v. Stoudt's Ferry Preparation Co.*, 602 F.2d 589 (3d Cir. 1979), *cert. denied sub nom., Stoudt's Ferry Preparation Co. v. Marshall*, 444 U.S. 1015, 100 S.Ct. 665, 62 L.Ed.2d 644 (1980), have each found the preliminary injunction procedure outlined in FMSHA constitutional. In their opinion, warrantless searches of stone quarries and sand pits do not offend the constitution since these are pervasively regulated businesses.

In *Stoudt's Ferry* the court reached its decision by comparing FMSHA with the Occupational Safety and Health Act (OSHA). The court did this to determine the effect of the Supreme Court's holding in *Marshall v. Barlow's, Inc., supra*, that the warrantless provisions of OSHA were unconstitutional. The Court in Stoudt's Ferry held:

> Although the Mine Safety Act's coverage of enterprises has been broadened from that of the predecessor Coal Mine Safety Act to include other than coal mining, the statute is still much more limited than OSHA and is aimed at an industry with an acknowledged history of serious accidents. Moreover, unlike OSHA, the Mine Safety Act mandates periodic inspections and is specific in that no advance warning is to be given when the inspection is to determine whether an imminent danger exists or whether there is compliance with mandatory health and safety standards or with any citations, orders, or decisions outstanding, 30 U.S.C.A. § 813(a). If the inspection is for obtaining or disseminating information about health and safety conditions, causes of accidents, or gathering of information about mandatory health and safety standards, the Secretary may give advance notice. *Id.*

> It may be seen that the Mine Safety inspection provision places limitations upon the purposes for which searches may be made, limits those in which no advance notice is given, and is more narrowly drawn than the comparable OSHA section. There is consequently less likelihood of the abuses of "unbridled discretion of executive and administrative officers" which *Barlow's* found objectionable.

436 U.S. at 323, 98 S.Ct. at 1825. Though *Barlow's* was not impressed with the importance of surprise inspections in the OSHA setting, we are not prepared to say that the legislative judgment as to their necessity in the context of mine safety is misplaced. *Marshall v. Stoudt's Ferry Preparation Co.*, 602 F.2d at 594. The court was also impressed by the procedures provided for under 30 U.S.C. § 818, stating:

> Another significant difference between the statutes is that the Mine Safety Act provides for immediate judicial review by requiring the Secretary to secure an injunction in the district court if he is refused entry. 30 U.S.C.A. § 818. Any unusual privacy expectations may be fully explored in that proceeding and a reasonable accommodation may be achieved. *Marshall v. Stoudt's Ferry Preparation Co.*, 602 F.2d at 594.

In *Marshall v. Nolichuckey Sand Co., supra,* the court noted that the sand and gravel extraction industry has neither "the long history of regulation referred to in *Colonnade* [nor] the extensive licensing scheme which was present in both *Colonnade* and *Biswell.*" 606 F.2d at 695. However, the court found that the gravel industry, as recognized by Congress exposes miners to "severe health and safety hazards." *Id.* Consequently, the court found the warrantless inspection provisions of FMSHA are reasonable.

In *Marshall v. Sink, supra,* the Fourth Circuit Court of Appeals echoed the themes of *Stoudt's Ferry* and *Nolichuckey Sand* noting the "overriding governmental interest in the safety of miners." 614 F.2d at 39. It further held that "Congress has a legitimate interest in protecting all persons from these hazardous conditions as it does in protecting any employee in a large mine." *Id.* Finally, that court also noted that any privacy interests can be protected by the preliminary injunction procedure provided for in the statute.

It is important to note that in *Marshall v. Sink, supra,* the court found that the injunction procedure "permits the operator to present his objections to a district court before . . . any sanctions are imposed." The case before this Court, however, illustrates that just the opposite is true.

The preliminary injunction procedure may provide a method by which a gravel pit operator can have his privacy interests protected, but it is at a cost that, in reality, curtails the utilizations of such privacy expectations. In the case at bar, the inspector, Walter C. Brey, issued a citation for denial of entry when defendant's president, Douglas E. Dewey, refused to allow Brey to continue a safety inspection of the pit. (Plaintiff's brief of October 16, 1979, in support of its motion for summary judgment). This citation eventually resulted in a penalty of $1,000.00. (*Secretary of Labor, MSHA v. Waukesha Lime & Stone,* VINC 79–66 PM, A.O. No. 47–00235–05003 (June 5, 1979); letter of February 6, 1980 from Francis Croak defendants' attorney).

While the preliminary injunction proceedings may get the defendants into court to vindicate their constitutional rights, the cost to them is indeed quite high. It seems a strange procedure to impose such a burden on a citizen in order to enjoy the fruits of the Fourth Amendment which courts are enjoined to liberally construe, and to which all owe a duty of vigilance for its effective enforcement, lest there be an impairment of those very rights for which it was adopted. *Ker v. State of California,* 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963). This is a particularly high cost to pay to protect valid privacy claims. The mine operator must choose between protecting valid privacy interests or his pocketbook. In essence, the injunctive procedure does not present a fair means for protecting privacy interests.

As this Court previously opined, the exceptions which the Supreme Court has heretofore engrafted upon the warrant requirement (firearms and alcohol) present quite different situations from stone quarries. The *Biswell-Colonnade* exception involves businesses that are not only closely regulated, but also have a long history of such regulation. Although quarries have been in

existence for thousands of years, only when Congress decided in 1966 to incorporate them within the Mine Safety Act did quarries become pervasively regulated in this country. Unlike firearms and alcohol, and to some extent coal mines, quarries have not had a long history of pervasive regulation. Therefore, the regulation of quarries fails to meet the requirement of the *Biswell-Colonnade* exception to the Fourth Amendment rule requiring warrants for searches of private premises.

In light of the foregoing, this Court is persuaded that, without circuit precedent in point and with due regard to the basic constitutional issue at stake, it must adhere to its prior position, deny plaintiff's motion for summary judgment and grant summary judgment in favor of defendants on the basis that 30 U.S.C. § 813(a) is unconstitutional and thus unenforceable.

SO ORDERED.